UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES E. STINNETT,<br><br>                    Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN,<br><br>                    Defendant. | NO:  CV-13-3115-FVS<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 13 and 15.  This matter was submitted for consideration without oral argument.  Plaintiff was represented by D. James Tree. Defendant was represented by Daphne Banay.  The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the court grants Plaintiff's Motion for Summary Judgment and denies Defendant's Motion for Summary Judgment.

**JURISDICTION**

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 1

Plaintiff James E. Stinnett protectively filed for disability insurance benefits on August 4, 2009 alleging an onset date of May 1, 2008, and supplemental security income ("SSI") on December 17, 2009 alleging an onset date of May 16, 2009. Tr. 104-110, 165-166, 169-175. A prior ALJ decision dated May 20, 2009 granted Plaintiff a requested closed period of disability between October 15, 2007 and September 15, 2007 (Tr. 83-98), therefore Plaintiff's counsel agreed at the hearing that the revised alleged onset date should be May 21, 2009, the day after the prior ALJ decision. Tr. 50. Benefits in this application were denied initially and upon reconsideration. Tr. 111-113, 117-120. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Rudy (Rudolph) M. Murgo on December 8, 2011. Tr. 47-82. Plaintiff was represented by counsel and testified at the hearing. Tr. 51-70. Vocational expert Hanoch Livneh, Ph.D. also testified. Tr. 71-80. The ALJ denied benefits (Tr. 15-35) and the Appeals Council denied review (Tr. 1). The matter is now before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and will therefore only be summarized here.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 2

Plaintiff was 41 years old at the time of the hearing. Tr. 51. His highest level of education was tenth grade, and he does not have any vocational training. Tr. 53. Plaintiff has been employed as an auto mechanic, gas station attendant, heavy equipment operator, laborer, dishwasher, and security guard. Tr. 56-58, 72-73. At the time of the hearing Plaintiff was working an hour a day wiping down tables at a restaurant. Tr. 55-56, 60, 64. Plaintiff alleges he is disabled based on depression, ADHD, psychotic disorder, arthritis and degenerative disc disease. Tr. 117. Plaintiff testified he can walk several blocks to work and carry a gallon of milk. Tr. 60. He can sit for a half hour to 45 minutes at a time before his neck and back start bothering him. Tr. 60. He testified he stand for an hour and a half at a time, and has to lay down two or three times a day because he is "tired" and "depressed." Tr. 69. He has trouble concentrating and gets irritable "a lot." Tr. 67. Plaintiff testified that he does not belong to clubs or organizations and does not go to events because there are too many people. Tr. 61. His mother does the dishes, laundry, shopping, and cooking for him. Tr. 63.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue,* 698 F.3d 1153,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 3

1158–59 (9th Cir.2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means

relevant evidence that "a reasonable mind might accept as adequate to support a

conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently,

substantial evidence equates to "more than a mere scintilla[,] but less than a

preponderance." *Id.* (quotation and citation omitted). In determining whether this

standard has been satisfied, a reviewing court must consider the entire record as a

whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. If the evidence in the record "is susceptible

to more than one rational interpretation, [the court] must uphold the ALJ's findings

if they are supported by inferences reasonably drawn from the record." *Molina v.*

*Astrue,* 674 F.3d 1104, 1111 (9th Cir.2012). Further, a district court "may not

reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An

error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability

determination." *Id.* at 1115 (quotation and citation omitted). The party appealing

the ALJ's decision generally bears the burden of establishing that it was harmed.

*Shinseki v. Sanders,* 556 U.S. 396, 409–10 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act. First, the claimant must be "unable to

1    engage in any substantial gainful activity by reason of any medically determinable

2    physical or mental impairment which can be expected to result in death or which

3    has lasted or can be expected to last for a continuous period of not less than twelve

4    months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be

5    "of such severity that he is not only unable to do his previous work[,] but cannot,

6    considering his age, education, and work experience, engage in any other kind of

7    substantial gainful work which exists in the national economy." 42 U.S.C. §

8    1382c(a)(3)(B).

9        The Commissioner has established a five-step sequential analysis to

10    determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§

11    404.1520(a)(4)(i)-(v); 416.920(a)(4) (i)-(v). At step one, the Commissioner

12    considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

13    416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the

14    Commissioner must find that the claimant is not disabled. 20 C.F.R. § §

15    404.1520(b); 416.920(b).

16        If the claimant is not engaged in substantial gainful activities, the analysis

17    proceeds to step two. At this step, the Commissioner considers the severity of the

18    claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the

19    claimant suffers from "any impairment or combination of impairments which

20    significantly limits [his or her] physical or mental ability to do basic work

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 5

1  activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c);

2  416.920(c). If the claimant's impairment does not satisfy this severity threshold,

3  however, the Commissioner must find that the claimant is not disabled. *Id.*

4     At step three, the Commissioner compares the claimant's impairment to

5  several impairments recognized by the Commissioner to be so severe as to

6  preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§

7  404.1520(a)(4)(iii); 416.920(a) (4)(iii). If the impairment is as severe or more

8  severe than one of the enumerated impairments, the Commissioner must find the

9  claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416 .920(d).

10    If the severity of the claimant's impairment does meet or exceed the severity

11 of the enumerated impairments, the Commissioner must pause to assess the

12 claimant's "residual functional capacity." Residual functional capacity ("RFC"),

13 defined generally as the claimant's ability to perform physical and mental work

14 activities on a sustained basis despite his or her limitations (20 C.F.R. §§

15 404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the

16 analysis.

17    At step four, the Commissioner considers whether, in view of the claimant's

18 RFC, the claimant is capable of performing work that he or she has performed in

19 the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

20 If the claimant is capable of performing past relevant work, the Commissioner

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  6

must find that the claimant is not disabled. 20 C.F.R. § § 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a) (4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § § 404.1520(g)(1); 416.920(g) (1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.,* 616 F.3d 1068, 1071 (9th Cir.2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § § 404.1560(c); 416.960(c)(2); *Beltran v. Astrue,* 700 F.3d 386, 389 (9th Cir. 2012).

ALJ'S FINDINGS

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 7

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since May 21, 2009, the date after the prior ALJ decision. Tr. 20. At step two, the ALJ found Plaintiff has the following severe impairments: polysubstance abuse, depression, bipolar disorder, attention-deficit hyperactivity disorder. Tr. 21. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App'x 1. Tr. 22. The ALJ then determined that Plaintiff had the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant cannot climb ladders, ropes, or scaffolds. He should avoid concentrated exposure to workplace hazards. The claimant is limited to performing simple, routine, repetitive work that requires only limited interaction with coworkers and the public.

Tr. 23. At step four, the ALJ found Plaintiff is capable of performing past relevant work as a dishwasher and kitchen helper. Tr. 30. The ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from May 21, 2009, through the date of this decision. Tr. 30.

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, Plaintiff asserts: (1) the ALJ committed reversible error by improperly rejecting Plaintiff's subjective complaints; (2) the ALJ erred by posing an incomplete hypothetical to the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  8

vocational expert and improperly concluding Plaintiff could perform past relevant work at step four; and (3) the ALJ failed to properly evaluate Plaintiff's mental impairments in accordance with the "special technique" at step three. ECF No. 13 at 8-21. Defendant argues: (1) the ALJ provided specific, clear and convincing reasons to reject Plaintiff's subjective complaints; (2) the ALJ provided proper reasons to reject the medical evidence and did not err at step four; and (3) the ALJ did not err with respect to documenting application of the special technique at step three. ECF No. 15 at 6-19.

## DISCUSSION

### A. Credibility

In social security proceedings, a claimant must prove the existence of physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. §§ 416.908; 416.927. A claimant's statements about his or her symptoms alone will not suffice. *Id*. Once an impairment has been proven to exist, the claimant need not offer further medical evidence to substantiate the alleged severity of his or her symptoms. *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir.1991) (en banc). As long as the impairment "could reasonably be expected to produce [the] symptoms," the claimant may offer a subjective evaluation as to the severity of the impairment. *Id.* This rule

recognizes that the severity of a claimant's symptoms "cannot be objectively verified or measured." *Id.* at 347 (quotation and citation omitted).

If an ALJ finds the claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir.2002). In making this determination, the ALJ may consider, *inter alia:* (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Id.*  Absent any evidence of malingering, the ALJ's reasons for discrediting the claimant's testimony must be "specific, clear and convincing." *Chaudhry v. Astrue,* 688 F.3d 661, 672 (9th Cir.2012) (quotation and citation omitted).

The ALJ found "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Tr. 24. Plaintiff argues the ALJ committed reversible error by improperly rejecting Plaintiff's subjective complaints. ECF No. 13 at 14-21. Primarily, Plaintiff challenges the ALJ's finding that Plaintiff's "course of treatment does not support

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 10

1    his allegations of total disability." Tr. 24. Unexplained, or inadequately explained,

2    failure to seek treatment or follow a prescribed course of treatment may be the

3    basis for an adverse credibility finding unless there is a showing of a good reason

4    for the failure.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  However, an

5    ALJ "must not draw any inferences about an individual's symptoms and their

6    functional effects from a failure to seek or pursue regular medical treatment

7    without first considering any explanations that the individual may provide, or other

8    information in the case record, that may explain infrequent or irregular medical

9    visits or failure to seek medical treatment." Social Security Ruling ("SSR") 96-7p

10   at *7 (July 2, 1996), available at 1996 WL 374186. Specifically, disability benefits

11   may not be denied because of a claimant's inability to afford treatment. *See*

12   *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).

13         The ALJ appears to rely heavily on "significant periods where [Plaintiff] did

14   not receive any treatment" as a reason to discount his credibility. Tr. 24-25. In

15   support of this reasoning, the ALJ refers to Plaintiff's report in January 2010 that

16   he went without psychiatric and pain medications for a year and a half. Tr. 557.

17   The ALJ acknowledges that Plaintiff "went without treatment because he lacked

18   insurance. However, neither the treatment notes nor the claimant's testimony

19   describe him making any effort to obtain free or low-cost medications through

20   resources such as sliding-fee clinics, government sponsored clinics, and medication

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 11

scholarships." Tr. 24. Later in the decision the ALJ again cites to this same time period and finds that Plaintiff's failure to "establish care" for nine months after being told to do so by an emergency room doctor "leads one to believe the claimant's impairments are not as severe as he alleges." Tr. 25. Finally, the ALJ cites to a treatment note in September 2011 indicating that Plaintiff was discharged from treatment after failing to renew contact with his counselor after "at least a four month gap without any sessions." Tr. 25 (citing Tr. 433). The ALJ found this "failure to maintain contact with his counselor leads one to believe either that his mental impairments are not as severe as he alleges, or that [sic] his is not genuinely motivated to receive treatment." Tr. 25. However, the ALJ did not consider Plaintiff's testimony at the hearing on December 8, 2011, only a few months after he was discharged from this treatment, that he was not "going" for medical treatment because he could not afford it and had no medical coverage. Tr. 54.

Defendant argues that the ALJ properly acknowledged Plaintiff's explanation that he went without treatment because he lacked insurance. Tr. 24; ECF No. 15 at 13. However, the ALJ appears to impose an additional burden on the Plaintiff to prove that he sought free or low-cost treatment during the period he lacked insurance. The record includes suggestions to Plaintiff that he could obtain $4.00 prescription medications from Walmart (Tr. 557); and instructions to Plaintiff after his discharge from counseling that he should continue with support

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  12

groups, utilize community resources, use crisis lines, utilize family members for

support, take his medications, abstain from illegal drugs, follow up with his

primary care provider, and follow his relapse prevention and safety plans (Tr. 439).

However, the ALJ did not specify which resource Plaintiff was expected to utilize,

nor did the ALJ provide any citation to the record suggesting that seeking that

seeking treatment at a low-cost or free clinic was a viable option. Most notably, at

the administrative hearing the ALJ only asked two questions regarding Plaintiff's

insurance status or ability to pay for treatment as follows:

> ALJ: Are you on any health plans?
> PL: No, not at all.
> ALJ: So how do you pay for medical?
> PL: I haven't been going because I can't afford it.

Tr. 54. The ALJ did not follow up on these questions at the hearing in order to

properly evaluate Plaintiff's explanations for gaps in treatment and determine

whether he was able to pursue free or low-cost options. An ALJ's duty to develop

the record in this regard is significant because financial concerns and lack of

insurance are valid reasons why Plaintiff may not seek treatment. SSR 96-7p at *7-

8, *available at* 1996 WL 374186 (directing the ALJ to question a claimant at the

administrative hearing to determine whether there are good reasons for not

pursuing medical treatment in a consistent manner which may include inability to

afford treatment and lack of access to free or low-cost medical services). This

failure was particularly glaring in this case because, as noted by Plaintiff, the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 13

record consistently indicates that Plaintiff was unable to obtain treatment due to lack of insurance or lack of funds. Tr. 54, 257-258, 265, 422, 447, 463, 557, 574, 580, 696, 748. The ALJ did not properly consider Plaintiff's explanations for failing to pursue a consistent course of treatment. Thus, the ALJ's rejection of Plaintiff's credibility based on unexplained failure to pursue treatment was error. However, this error is harmless because, as discussed below, the ALJ's remaining reasoning and ultimate credibility finding is adequately supported by substantial evidence. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

First, the ALJ found that "the limited objective findings … do not describe physical limitations so severe as to preclude the claimant from performing fulltime work consistent with the residual functional capacity found in this decision." Tr. 25. Subjective testimony may not be rejected solely because it is not corroborated by objective medical findings, however, medical evidence is a relevant factor in determining the severity of a claimant's disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Plaintiff testified he cannot stand for "long period[s] of time," and can only sit "for a half hour, 45 minutes at a time" because of back pain. Tr. 60, 69. However, as noted by the ALJ, the objective findings in the record indicating limitations due to back pain are "limited." Tr. 25. Two emergency room visits, in November 2008 and March 2009, document lumbar

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 14

tenderness pain that significantly decreased after the administration of pain medication. Tr. 237, 239. In addition, MRI results from 2008 showing mild disk bulging from L3 through L5 with mild to moderate central canal narrowing, normal nerve conduction testing on the right lower extremity, normal sural SAP, normal peroneal and tibial motor nerve conductions, and normal EMG of the right lower extremity (Tr. 235). The neurologist who conducted the testing in 2008 also found no evidence of peripheral neuropathy, and recommended physical therapy and possible steroid injections. Tr. 236. In December 2009 MRI findings showed "mild, multilevel spondylosis as evidenced by some endplate irregularities and marginal osteophyte formation. Overall vertebral body height and disc spaces are well-maintained. No spondylolysis or spondylolisthesis is evident." Tr. 262. The inconsistencies between Plaintiff's testimony regarding his back pain and the objective record was properly considered by the ALJ, as it did not form the sole basis for her adverse credibility finding.

Second, the ALJ cited portions of the medical record containing "inconsistencies that undermine the claimant's credibility."[1] Tr. 25. In weighing a

---

[1] Plaintiff does not identify or challenge this reason given by the ALJ in support of his adverse credibility finding. *See Carmickle*, 533 F.3d at 1161 n.2 (court may decline to address issues not raised with specificity in Plaintiff's briefing). Instead, Plaintiff argues that "the ALJ's assertion that it appears that the claimant may

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 15

claimant's credibility, an ALJ may utilize "ordinary techniques of credibility evaluation, such as … prior inconsistent statements concerning the symptoms." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). In support of this reasoning, the ALJ cites to notes from a 2009 emergency room visit during which Plaintiff "states [his back pain] started about 10 days ago, but has been getting progressively worse. States he has been essentially bedridden, although with further investigation he stated yesterday he worked on an automobile engine out in his driveway, so has been intermittently active." Tr. 237. The same record reveals embellish his alleged symptoms at times is erroneous." ECF No. 13 at 17-19; Tr. 25-26. However, the court finds the ALJ's comments about embellishment of symptoms were not "reasons" given to support the ultimate credibility finding. Rather, these portions of the ALJ's decision detailed inconsistencies in Plaintiff's medical record regarding reporting of symptoms, and as indicated below, the reasoning was not in error. Even assuming this reasoning was improper, any error is harmless because the ALJ's remaining reasoning and ultimate credibility finding is adequately supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63. Finally, the court declines to address Plaintiff's argument that any alleged ambiguity in the record should have been addressed by the ALJ because the issue of developing the record was not addressed with specificity in Plaintiff's briefing. *See id*. at 1161 n.2; ECF No. 13 at 18-19.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 16

1  that Plaintiff initially presented as hyperventilating, lying in the fetal position, and

2  weeping; but "settled down" as he began to talk to the doctor, as did his breathing

3  rate and the "tingling" in his hands and arms. Tr. 237. Plaintiff argues that on exam

4  the emergency room doctor noted tenderness in Plaintiff's back and decreased

5  range of motion secondary to pain and spasms. Tr. 237-238. However, "where

6  evidence is susceptible to more than one rational interpretation, it is the

7  [Commissioner's] conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d

8  676, 679 (9th Cir. 2005)

9       The ALJ also relied on prior inconsistent statements by Plaintiff regarding

10  his alleged sedentary lifestyle and isolation from other people. In December 2009

11  Plaintiff told examining psychologist Dr. Jay M. Toews that he had no hobbies and

12  socialized with others "once in a blue moon." Tr. 265. However, in December

13  2010 Plaintiff reported to his counselor Mr. Woolpert that he was in a pool league

14  that was "enjoyable for him and gives him social contact" and he started working

15  part-time "for extra money and [to] feel more worthwhile." Tr. 455. In February

16  2011, Plaintiff "reported on a variety of activities [he] has been doing that are

17  helping him feel more positive about himself and some are fun as well." Tr. 451.

18  And again in March 2011 Plaintiff reported he was "enjoying participating in a

19  pool league … [and] enjoying get togethers with his brother and family and doing

20

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  17

1   some cleaning to make some extra money." Tr. 444. These prior inconsistent

2   statements were a clear and convincing reason to find Plaintiff not credible.

3       Third, while not addressed by Plaintiff in his briefing, the ALJ found

4   "claimant's medications were at least partially successful in treating his

5   symptoms." Tr. 25. An ALJ may rely on the effectiveness of treatment to support

6   an adverse credibility finding. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169

7   F.3d 595, 599-600 (9th Cir. 1999). Here, the ALJ cited to a treatment note from

8   2011 that Plaintiff's medications were working "ok" and he was using coping

9   skills to avoid "unneeded flareups." Tr. 442. Also in 2011, Plaintiff reported to his

10  treating physician that he believed his mood improved on his current medications

11  and his therapy sessions were helping his to deal with stress. Tr. 444. His

12  medications were subsequently continued without any changes. Tr. 446. The ALJ

13  also noted that after receiving pain relievers during 2008 and 2009 emergency

14  room visits for back pain, Plaintiff's alleged pain symptoms either resolved or

15  improved. Tr. 238, 240. The record is replete with reports from Plaintiff that

16  medication and therapy improve his physical and mental health symptoms. *See* Tr.

17  257, 264, 344, 348, 392, 395-96, 400, 404-08, 412, 422, 428, 442-44, 449, 455,

18  457-59, 464-65, 468, 470, 549, 650. Plaintiff also testified that he was taking

19  medications at the time of the hearing. Tr. 59. This was a clear and convincing

20  reason, supported by substantial evidence, to find Plaintiff not credible.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  18

Fourth, the ALJ found Plaintiff's "daily activities are consistent with the above residual functional capacity assessment and are inconsistent with his allegations of disability." Tr. 26. Evidence about daily activities is properly considered in making a credibility determination. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Plaintiff argues "the ALJ failed to make specific findings relating to [Plaintiff's] activities as applicable to workplace activities." ECF No. 13 at 19-21. However, as noted by Defendant, there are two grounds for using daily activities to form the basis of an adverse credibility determination. ECF No. 15 at 17. First, daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his or her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Second, daily activities are a valid reason to discount credibility if they contradict claimant's other testimony. *Id.*; *Molina*, 674 F.3d at 1113 ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

Here, the ALJ properly concluded that Plaintiff's daily activities, as documented in the medical record, were inconsistent with his allegations of a debilitating disability. Tr. 26. Plaintiff testified that "he leads a sedentary existence,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 19

1   and his mother performs all of the household chores such as cooking, cleaning,

2   shopping, and laundry." Tr. 26, 63. However, Plaintiff reported in December 2009

3   that he was "fully independent for basic self-care, and has a full complement of

4   independent living skills…. He is able to plan and prepare meals, do light house

5   work and laundry." Tr. 265. Plaintiff also testified that he did not belong to clubs

6   or organizations, and did not go to events because "it's too loud and there's too

7   many people" and "people and things bother [him]." Tr. 55, 61. However, as noted

8   above, Plaintiff reported in December 2010 that he was enjoying being in a pool

9   league and working part-time. Tr. 455. Similarly, in early 2011, Plaintiff reported

10  on a "variety of activities" that made him feel positive about himself, including:

11  participating in the pool league, enjoying socializing with family, and cleaning to

12  make "extra money." Tr. 444, 451. It is noted that Plaintiff's reports are moderated

13  by testimony that he did take out the trash, and occasionally spent time with

14  family. Tr. 60-63. However, while evidence of Plaintiff's daily activities may be

15  interpreted more favorably to the Plaintiff, "where evidence is susceptible to more

16  than one rational interpretation, it is the [Commissioner's] conclusion that must be

17  upheld." *Burch*, 400 F.3d at 679; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039

18  (9th Cir. 1995)("[t]he ALJ is responsible for determining credibility").

19

20

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  20

For all of these reasons, and having thoroughly reviewed the record, the court concludes that the ALJ supported his adverse credibility finding with specific, clear and convincing reasons supported by substantial evidence.

**B. Medical Opinion Evidence / Step Four Findings**

"If an ALJ's hypothetical does not reflect all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009)(citation and quotation marks omitted). Plaintiff argues the ALJ's hypothetical was insufficient because it did not adequately reflect all of Plaintiff's limitations. ECF No. 13 at 11. Specifically, Plaintiff contends that the ALJ gave "full weight" to the medical opinion signed by both Steven Woolpert, M.H.P. and Dr. Kari Heistand, M.D., but failed to include the limitations identified by these providers in the hypothetical posed to the vocational expert. ECF No. 13 at 9-12. Thus, according to Plaintiff, the ALJ committed reversible error by improperly concluding that Plaintiff could perform past relevant work at step four. In direct contradiction, Defendant argues that the ALJ properly rejected the medical opinion and therefore "did not err with respect to the ALJ's hypothetical question." ECF No. 15 at 6-8.

As an initial matter, the court must determine whether the ALJ's consideration of the medical opinion evidence was supported by the record and

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 21

free of legal error. Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir.2001)(citations omitted). If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater,* 81 F.3d 821, 830–831 (9th Cir.1995)). Additionally, the opinion of an "acceptable medical source" is given more weight than that of an "other source." SSR 06-03p, 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). The ALJ need only provide "germane reasons" for disregarding an "other source" opinion. *Molina*, 674 F.3d at 1111. However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

The ALJ generally described the joint opinion statement from Dr. Heistand and Mr. Woolpert as "opin[ing] that the claimant's impairments cause between none to moderate limitations in specific abilities related to maintaining fulltime

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 22

employment." Tr. 28. More specifically, the joint medical opinion assessed

moderate limitations with Plaintiff's ability to: understand and remember detailed

instructions; perform activities within a schedule, maintain regular attendance and

be punctual within customary tolerances; complete a normal workday and

workweek without interruptions from psychologically based symptoms and to

perform at a consistent pace without an unreasonable number and length of rest

periods; interact appropriately with the general public; ask simple questions or

request assistance; accept instructions and respond appropriately to criticism from

supervisors; get along with co-workers or peers without distracting them or

exhibiting behavioral extremes; and respond appropriately to changes in the work

setting. Tr. 320-321. "Moderate" is defined as "significant interference with basic

work-related activities, i.e., unable to perform the described mental activity for at

least 20% of the work day and up to 33% of the work day." Tr. 320. The

"comments" section of joint evaluation identified Plaintiff's symptoms as "down

mood, sleep disturbance, irritability, passive suicidal ideation, auditory

hallucinations and paranoia, decreased energy and concentration, … [and] has a

diagnosis of obsessive-compulsive disorder;" and opined that "currently and during

the past 9 years of treatment services these symptoms have significantly affected

social interactions, activity level, and cognitive functioning." Tr. 322.

The ALJ found the opinion did not "include a proposed residual functional capacity, but the check-box limitations they marked are generally consistent with the limitations proposed by Drs. Toews, Gentile, and Beaty. Accordingly, this joint opinion is further persuasive evidence that the claimant's mental impairments are not disabling." Tr. 28. Plaintiff argues the ALJ gave "full weight" to the joint opinion, ostensibly because the ALJ determined it "was consistent with other evidence of record." ECF No. 13 at 9-12. However, a cursory review of the record reveals that despite the ALJ's finding, the check-box portions of the joint opinion were not, in fact, "generally consistent with the limitations proposed by Drs. Toews, Gentile, and Beaty." Tr. 28. Dr. Toews found Plaintiff was "cognitively intact" and "attention, concentration and short-term memory are unimpaired." Tr. 266. In contrast, the joint opinion observed that Plaintiff's mental health symptoms "significantly affected" his cognitive functioning. Tr. 322. Dr. Gentile and Dr. Beaty found Plaintiff was "not significantly limited" in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 276-277; 308-309. In direct contrast, these same categories were assessed as "moderately limited" in the joint opinion. Tr. 320-321. For all of these reasons, the

1    joint opinion does not appear to be "consistent" with the other opinions identified

2    by the ALJ.

3        Moreover, despite Plaintiff's contention, the ALJ does *not* assign the joint

4    opinion "full weight." *See* Tr. 28; ECF No. 13 at 9. In determining whether a

5    Plaintiff is disabled, the regulations direct the ALJ to evaluate every medical

6    opinion in the record regardless of its source. 20 C.F.R. §§ 404.1527(b);

7    416.927(b). While the ALJ is not required to discuss all of the evidence presented,

8    he or she must explain why significant probative evidence has been rejected.

9    *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Here, the joint

10   medical opinion from Plaintiff's treating medical professionals is arguably

11   probative and significant for several reasons. First, "[b]ecause treating physicians

12   are employed to cure and thus have a greater opportunity to know and observe the

13   patient as an individual, their opinions are given greater weight than the opinions

14   of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

15   Second, the joint opinion includes moderate limitations that were not included in

16   the ALJ's RFC finding, for example, the ability to complete a normal workday and

17   workweek without interruptions from psychologically based symptoms and to

18   perform at a consistent pace without an unreasonable number and length of rest

19   periods. Tr. 23, 320-321. Interestingly, despite the ALJ's failure to include this

20

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 25

limitation in the RFC, he asked the vocational expert at the hearing about the

ability to complete a normal workday and work week as follows:

> ALJ: And if a person is absent two or more days a month, are they employable in the national economy?
> VE: I don't think [sic] is employable to tolerate a person [sic] would miss two plus days a month, no.
> ALJ: And if they're absent 10 percent or more of the work day – work week – work month – over a period of time are they employable in the national economy?
> VE: Again, I don't think the employers would tolerate the amount of 10 percent loss of the work day.
> ALJ: Okay. And thought of another way – most jobs you get a break every two hours. If somebody needed to lay down more than the break periods – more than the 10 percent time – would they be able to be employed in the national economy?
> VE: So if that's in addition to the normal break time, they still require 10 percent of lay down type of positions?
> ALJ: Right.
> VE: No. 10 percent during the work day would not be accommodated by employers.

Tr. 74-75. Particularly in light of this testimony from the vocational expert, if the

joint opinion was in fact accorded "great weight" as claimed by the Plaintiff, the

moderate limitation on Plaintiff's ability to complete a normal workday and

workweek would likely have a significant impact on the RFC assessment, and

perhaps the ultimate disability finding. For all of these reasons, the ALJ erred in

not evaluating this significant and probative evidence.

  Finally, in direct opposition to Plaintiff's argument, the Defendant maintains

that the ALJ "appropriately rejected Therapist Woolpert's and Dr. Heistand's

checkbox limitations based, respectively, on a germane and a specific and

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  26

legitimate reason, that is, because they did not include a proposed residual functional capacity." ECF No. 15 at 8. The court disagrees. Defendant appears to base this argument on the ALJ's notation that "the opinion statement does not include a proposed residual functional capacity." Tr. 28. It is well-settled that the court does not require a special "incantation" by the ALJ when rejecting medical opinions. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). However, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray*, 554 F.3d at 1225-26. Here, the court is not persuaded that this statement was intended as a reason for rejecting this opinion, particularly in light of the subsequent findings by the ALJ that the joint opinion was "further persuasive evidence that the claimant's mental impairments are not disabling." Tr. 28.

    Overall, the ALJ's discussion of the joint opinion lacked the specificity required to allow the court to review the ALJ's reasoning. Moreover, the ALJ's failure to adequately consider the joint medical opinion of Mr. Woolpert and Dr. Heistand is legal error that taints the ALJ's RFC determination, the hypothetical posed to the vocational expert at the hearing, and the step four findings. *See* 20 C.F.R. §§ 404.1527(e)(2)(ii) and 416.927(e)(2)(ii). On remand, the ALJ must

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 27

properly weigh all the medical evidence according to the requisite factors, reassess

the Plaintiff's RFC, and pose an accurate hypothetical at step four that includes

limitations supported by substantial evidence.

**C. Special Technique at Step Three**

20 C.F.R. § 404.1520a outlines the "special technique at each level in the

administrative review process" used to evaluate the severity of mental

impairments. The ALJ decision "must show the significant history, including

examination and laboratory findings, and the functional limitations that were

considered in reaching a conclusion about the severity of the mental impairment(s).

The decision must include a specific finding as to the degree of limitation in each

of the functional areas described in paragraph (c) of this section." 20 C.F.R. §

404.1520a(e)(4). Here, the ALJ found at step three that Plaintiff "does not have an

impairment or combination of impairments that meets or medically equals the

severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App'x 1."

Tr. 22. In assessing "paragraph B" criteria, the ALJ included specific findings in

the four required functional areas as follows:

> In activities of daily living, the claimant has mild restriction. In social
> functioning, the claimant has moderate difficulties. With regard to
> concentration, persistence or pace, the claimant has moderate difficulties.
> The claimant's abilities and limitations in these areas are discussed
> throughout this decision. As for episodes of decompensation, the claimant
> has experienced no episodes of decompensation, which have been of
> extended duration.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 28

Tr. 23.

Plaintiff argues this "boilerplate statement … does not satisfy the Regulation's requirement for documentation of specific findings and appropriate rationale for each of the functional areas." ECF No. 13 at 13. This argument is misplaced. As noted by Defendant, the Ninth Circuit rejected the argument that "[t]he ALJ was further required to document the considerations underlying the findings for those four areas" and concluded "that a specific finding as to the four functional areas was sufficient." *Keyser v. Comm'r Soc. Sec. Admin*., 648 F.3d 721, 726 (9th Cir. 2011) (citing *Hoopai v. Astrue*, 499 F.3d 1071, 1077-78 (9th Cir. 2007)) ("The ALJ clearly met this requirement by rating and assessing [Plaintiff's] limitations in each of these four functional areas. The ALJ was not required to make any more specific findings of the claimant's functional limitations."). The ALJ properly rated and assessed Plaintiff's limitations in each of the four functional areas. Tr. 23. Thus, the ALJ did not err at step three.

## CONCLUSION

The ALJ's decision was not supported by substantial evidence and free of legal error. Remand is appropriate when, like here, a decision does not adequately explain how a conclusion was reached, "[a]nd that is so even if [the ALJ] can offer proper post hoc explanations for such unexplained conclusions," for "the Commissioner's decision must stand or fall with the reasons set forth in the ALJ's

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 29

decision, as adopted by the Appeals Council." *Barbato v. Comm'r of Soc. Sec.,* 923 F.Supp. 1273, 1276 n. 2 (C.D.Cal.1996) (citations omitted). On remand, the ALJ is not required to reconsider findings regarding the properly supported adverse credibility finding. The ALJ is only required to reconsider the findings at step four, including properly assigning weight to all medical opinions according to the requisite factors, reassessing the Plaintiff's RFC, and if necessary, taking additional testimony from a vocational expert.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 13, is **GRANTED**. The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. § 405(g).

2. Defendant's Motion for Summary Judgment, ECF No. 15, is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** this 4th day of December, 2014.

_____s /Fred Van Sickle_____
Fred Van Sickle
Senior United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 30